IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALBERT VAREL,

    Plaintiff,

vs.

SMURFIT-STONE CONTAINER CORPORATION,

    Defendant.

Case No. 12-cv-103-JPG-SCW

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Smurfit-Stone Container Corporation's ("Smurfit-Stone") motion for summary judgment (Doc. 20). Plaintiff Albert Varel ("Varel") filed a response (Doc. 22) to which Smurfit-Stone replied (Doc. 25). For the following reasons, the Court denies Smurfit-Stone's motion for summary judgment.

**1. Facts and Procedural History**

Varel worked for Smurfit-Stone[1] for over 43 years from October 7, 1965, until the day he was terminated on February 20, 2009. Varel suffered an on-the-job injury on December 5, 2000, when he tripped and fell over a hose. At the time of this accident, Varel's supervisor employed a policy wherein he discouraged employees from filing workers' compensation claims for their on-the-job injuries. Rather, that supervisor encouraged employees to submit their on-the-job injuries as claims to Boston Mutual for non-employment accident and sickness claims. Varel, however, filed a workers' compensation claim on November 13, 2003. He also notified Smurfit-

---

[1] As Smurfit-Stone points out, it "was merged with and into RockTenn CP, LLC in a merger dated May 27, 2011." Doc. 2, p. 1.

Stone's corporate office of his supervisor's policy that discouraged the filing of workers' compensation claims.[2]

Thereafter, the parties engaged in settlement negotiations with regard to Varel's workers' compensation claim. On March 31, 2008, Smurfit-Stone, through its attorney, offered to settle Varel's workers' compensation claim "as long as it was tied to a resignation." (Doc. 2-1, p. 2). Varel refused this offer, and a settlement that was not contingent on Varel's resignation was finally reached on July 2, 2008.

On January 26, 2009, approximately six months after the workers' compensation settlement, Varel was involved in an on-the-job accident while unloading rolls off of another driver's truck. While removing a roll, Varel scraped a wall with his forklift causing damage to company property. Varel noted in his deposition that the wall had obviously been damaged previously on multiple occasions. On February 9, 2009, as a result of the January 26, 2009 accident, Smurfit-Stone required Varel to sign a "Last Chance Agreement" wherein Varel was warned that any further damage to company property would result in his immediate termination.

Shortly thereafter, on February 17, 2009, Varel was involved in another accident while operating a Powered Industrial Truck that was following a transfer car. According to Varel, the transfer car malfunctioned and abruptly stopped, resulting in a collision between the truck he was operating and the transfer car. Varel alleges that the collision was not his fault because the transfer cart had malfunctioned. The transfer car at issue had previously malfunctioned by stopping abruptly, and work orders for repairs dated September 9, 2008, and December 10, 2008, were left unanswered by Smurfit-Stone. Further, Varel suggests that other employees had collided with the malfunctioning transfer car and were not given Last Chance Agreements.

---

[2] The corporate office ultimately terminated this supervisor because "he was telling workers to turn [workers' compensation] cases into sickness and accident policies." Doc. 21-1, p. 10.

Smurfit-Stone, however, chose to terminate Varel on February 20, 2009, purportedly as a result of the February 17, 2009 collision that violated the Last Chance Agreement.

On December 5, 2012, Varel filed a complaint in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, alleging retaliatory discharge against Smurfit-Stone for two reasons: (1) filing a workers' compensation claim; and (2) informing Smurfit-Stone's corporate office of its policy discouraging employees from filing workers' compensation claims. Smurfit-Stone filed its notice of removal on the basis of diversity jurisdiction. The instant motion contends that Smurfit-Stone is entitled to judgment as a matter of law because Varel has failed to show his termination was causally related to the filing of his workers' compensation claim or his report of the local office's policy. Accordingly, the Court will now turn to consider whether Varel has produced sufficient evidence to survive summary judgment with respect to the causation element of his claim.

   2. **Analysis**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

If the moving party is defending the claim at trial, he need not provide evidence affirmatively negating the plaintiff's claim. It is enough that he point to the absence of evidence to support an essential element of the plaintiff's claim for which she carries the burden of proof at trial. *Celotex*, 477 U.S. at 322-23, 325. Where the defendant has pointed to a lack of evidence for one of the essential elements of a plaintiff's claim, if the plaintiff fails to provide evidence sufficient to establish that element, there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322-23.

Now, the Court will recite the relevant law with respect to Varel's Illinois retaliatory discharge claim. As a general matter, an employer may terminate an at-will employee for any reason or no reason at all. *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 304 (7th Cir. 1996). Illinois, however, recognizes the tort of retaliatory discharge as an exception to this general rule. *Id.* To succeed on a retaliatory discharge claim the employee must establish that (1) the employee was discharged; (2) "the discharge was in retaliation for the employee's activities"; and (3) "the discharge violates a clear mandate of public policy." *Dotson v. BRP U.S. Inc.*, 520

F.3d 703, 707 (7th Cir. 2008) (citing *Hartlein v. Illinois Power Co.*, 601 N.E. 2d 720, 728 (Ill. 1992)). The Illinois Supreme Court has already determined that the discharge of an employee in retaliation for the exercise of an employee's workers' compensation rights violates the clear mandate of Illinois public policy. *Dotson*, 520 F.3d at 171 (citing *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357-58 (Ill. 1978)). An employee may establish retaliation for exercising his workers' compensation rights if he shows "(1) that he was the defendant's employee before his injury; (2) that he exercised a right granted by the Workers' Compensation Act; (3) and that he was discharged from employment with a causal connection to his filing a workers' compensation claim." *Dotson*, 520 F.3d at 171 (quoting *McCoy v. Maytag Corp.*, 495 F.3d 515, 521 (7th Cir. 2007)).

In a workers' compensation retaliatory discharge claim, the plaintiff must establish more than "a sequential connection – the filing of a workers' compensation claim followed by termination" to satisfy the causality requirement. *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994). Rather, "[t]he plaintiff must affirmatively show that the discharge was primarily in retaliation for his exercise of a protected right." *Id.*; *accord Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012). To that end, to survive summary judgment, a plaintiff "must 'proffer[] sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated.'" *Gordon*, 674 F.3d at 775 (quoting *Roger*, 21 F.3d at 149). Only then must the employer provide a legitimate reason for terminating the plaintiff's employment. *Gordon*, 674 F.3d at 775.

If the employer has a valid, non-pretextual basis for the termination, the employee cannot show causation and his claim must fail." *Id.* (citing *Hartlein*, 601 N.E.2d at 728). "To show pretext a plaintiff must offer evidence to indicate that the employer did not honestly believe the

5

reasons it gave for its action and is simply lying to 'cover [its] tracks.'" *McCoy v. Maytag Corp.* 495 F.3d 515, 522 (7th Cir. 2007) (quoting *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 435 (7th Cir. 2005)). "In other words, pretext 'means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.'" *McCoy*, 495 F.3d at 523 (quoting *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1997)); *see also Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997) ("The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered reason is pretextual.").

Here, Smurfit-Stone does not dispute that Varel was its employee or that Varel exercised rights granted by the Illinois Workers' Compensation Act. It does, however, argue that Varel fails to show a causal connection between his workers' compensation activity and termination. Specifically, Smurfit-Stone contends that it terminated Varel because he violated the Last Chance Agreement, and his exercise of his rights under the Workers' Compensation Act was not a factor in that termination. Accordingly, Smurfit-Stone argues it is entitled to judgment as a matter of law because it had a valid, non-pretextual reason for terminating Varel.

Varel argues that Smurfit-Stone's purported reason for terminating him was pretextual. Varel admits there is no direct evidence establishing Smurfit-Stone's pretext. However, he argues the circumstantial evidence provides sufficient evidence of the company's pretext. Specifically, Varel contends that the offer to settle his workers' compensation case in 2008 "so long as it is tied to a resignation" evidences the company's desire to terminate him. Further, the events surrounding the Last Chance Agreement provide circumstantial evidence that Smurfit-Stone's motivation was pretextual.

With regard to the Last Chance Agreement, Varel argues that the accident for which he was terminated was not his fault but was the result of malfunctioning equipment. Further, he argues that plant manager Jim Vidmar's failure to interview him or the other operator evidenced "a callous indifference to whether [Varel] was at fault and shows further circumstantial evidence that [Smurfit-Stone] wanted to fire [Varel]." Doc. 22, p. 6. Varel asserts that "[s]ince other employees hit the transfer cart and were not charged with a rule violation (See Plaintiff's deposition submitted as an exhibit by Defendant) one can reasonabl[y] conclude that [Smurfit-Stone]'s motive was purely retaliatory." Doc. 22, p. 7.

After reviewing the evidence in the light most favorable to Varel, the Court finds that Varel has presented sufficient evidence from which a reasonable jury could conclude that Smurfit-Stone's termination of Varel was improperly motivated. The Court finds it particularly relevant that other employees were involved in accidents and were not required to sign Last Chance Agreements. With regard to the January 26, 2009 accident, in which plaintiff scraped the side of the company's building with his forklift, Varel testified in his deposition that "the wall was already damaged," and "I just did a little bit more damage to the wall." Doc. 21-1, p. 23. However, Jim Vidmar, plant manager since August 2007 and produced by Smurfit-Stone as the person knowledgeable in these matters, could only recall using a Last Chance Agreement with one other employee. Doc. 26-3, p. 9. Vidmar's inability to recall using such a serious disciplinary tool could lead a reasonable jury to believe that Vidmar must not regularly use Last Chance Agreements. Varel's testimony that other employees had scraped the wall coupled with Vidmar's testimony that he could only recall using one other Last Chance Agreement could lead a reasonable jury to could conclude that Varel was treated differently than other employees who

7

had committed the same conduct.[3]  Because there is evidence that Varel was disciplined and terminated for conduct for which other employees were not disciplined or terminated, a reasonable jury could conclude that Smurfit-Stone had an improper motivation in terminating Varel.  *See Good v. CPI Corp.*, No. 11-cv-714-MJR-PMF, 2012 WL 4183214, at *5 (S.D. Ill. Sept. 18, 2012) (noting "retaliatory discharge may be established by circumstantial evidence; consequently, the issue of causation is usually not appropriate for summary judgment").  Thus, Smurfit-Stone is not entitled to judgment as a matter of law.

3. **Conclusion**

Accordingly, the Court **DENIES** Smurfit-Stone's motion for summary judgment (Doc. 20).

**IT IS SO ORDERED.**

**DATED:** December 12, 2012

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**

---

[3] The Court notes that Varel has alleged that Smurfit-Stone failed to answer discovery which would have provided Varel with the names of other employees who collided with the malfunctioning transfer cart and were not disciplined.  *See* Doc. 28.